### BREWER v. HEARST PUB. CO. et al.
### No. 10174.

United States Court of Appeals, Seventh Circuit.

Dec. 1, 1950.

Rehearing Denied Jan. 16, 1951.

John F. Sembower, Chicago, Ill. (Ednyfed H. Williams, John M. Leonard, Jr., Chicago, Ill., of counsel), for appellant.

Floyd E. Thompson, Roger W. Barrett, Chicago, Ill. (Poppenhusen, Johnston, Thompson & Raymond, Chicago, Ill., of counsel), for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

On June 24, 1949, the plaintiff N. R. Brewer, filed his complaint against the defendants, Hearst Publishing Company, a Delaware corporation, licensed to do business in Illinois, and William Randolph Hearst, a citizen of California.

The plaintiff alleges that he is a citizen of Illinois, a licensed member of the profession of veterinary medicine, a lecturer on physiology at the University of Chicago, and superintendent of the animal quarters at that university; that he enjoys a good reputation throughout Chicago, Illinois, and is held in high esteem by his neighbors and by the members of his profession. He charges that on March 29, 1949, on May 23, 1949, on June 4, 1949, on June 5, 1949, and again on June 12, 1949, defendants caused to be printed, published and circulated malicious, defamatory and libelous written matter about the plaintiff to his great damage.

Only the corporate defendant was served and it moved to dismiss the complaint. The trial court sustained said motion and filed a memorandum in writing giving the reasons which impelled that action.

The memorandum of the trial court has never been published, but we have adopted it, with some little emendation, as the opinion of this court.

The alleged libel is based on five publications which appeared on various days between March 29 and June 12, 1949, in the Chicago Herald-American, a newspaper published by defendant Hearst Publishing Company, Inc. The publications all related to the subject of vivisection, and particularly to House Bill No. 650 relating to that subject which was pending in the Illinois legislature.

Defendants' motion to dismiss and the brief in support thereof, raise the following objections to the complaint: (1) that the words complained of were not written of the plaintiff; (2) that the words, if they may be applied to the plaintiff, are not actionable per se; (3) that the words are not actionable per quod, for there are no allegations of special damages; and finally, that the defendants had the right to publish the statements in question on the basis of fair comment and criticism.

The publication of May 23, 1949, as complained of in paragraph 7 of the complaint, and set forth in full as Exhibit "B," consists entirely of photographs and captions which do not mention the plaintiff by name, do not in any way refer to the plaintiff, and were not published of and concerning the plaintiff. The captions on the photographs state that in 1944 persons at the Billings Memorial Hospital said that they would stop a test which involved inserting a tube in a dog's bladder, but in 1949, it is charged, the test was repeated. Nothing in the pictures indicates that plaintiff was one of the persons who said the practice would be stopped. No names of any persons are mentioned in the captions. Plaintiff alleges that the picture of the hands, leg and foot of a person which appears in one of the pictures is a picture of him. There is nothing in the publication which identifies or even suggests the identity of those parts of a person or any of the other persons pictured in the publication.

The articles published on June 5 and June 12, 1949, and complained of in paragraphs 9 and 10 of the complaint, are quotations reprinted from an article written by William Randolph Hearst, in 1941, eight years before. They contain his view on the general subject of vivisection and were not written of plaintiff or of any other particular individual.

Plaintiff's theory seems to be that he is a member of a group of persons—namely, those who participate in and sup-

port vivisection, and that any words written of and concerning this group are, in law, written of and concerning the plaintiff. However, such a theory may not be applied unless the publication can be said with certainty to include every individual within the group.

This was determined in Illinois in the recent case of Latimer v. Chicago Daily News, Inc., 330 Ill.App. 295–298, 71 N.E.2d 553. There the publication referred to the lawyers who represented the defendants in a sedition trial. From the publication it could not be said with certainty that the written words necessarily referred to every individual within the group. The Appellate Court affirmed the judgment dismissing the complaint saying 330 Ill.App. at page 298, 71 N.E.2d at page 555: "The indicated controlling question upon this record has not before been passed upon by courts of review in this state, but ample authority may be found in other jurisdictions, which sustains the position of defendant that an article such as this, directed against a group but not deemed to include all constituent members of the group, does not give plaintiffs a right of action for libel. (Citing cases.) No innuendo, under such circumstances, can render certain the identity of the plaintiffs, which is otherwise uncertain in the article. (Citing cases.)"

■ The words complained of were not written of and concerning the plaintiff and therefore were not actionable.

■ The news story and photographs published on March 29, 1949, complained of in paragraph 6 of the complaint, and set forth as Exhibit "A", say that at the International Kennel Club show, an exhibit of the National Society of Medical Research included four examples of dogs which had been operated on by vivisectionists. The society was described as a propaganda organization to combat the anti-vivisectionists. The writer of the story characterized the dogs as tortured and tormented. The only reference to the plaintiff are the statements that he was among those exhibiting the dogs, and he gave certain figures as to the number of animals quartered at the University of Chicago and the additional number that could be used there, and the caption to the photograph which called attention to the fact that plaintiff wore a necktie bearing a hand-painted picture of a dog.

The words from the news story published on June 4, 1949, set forth in paragraph 8 of the complaint, merely state that plaintiff "holds a job caring for tortured dogs and cats." The gist of plaintiff's complaint, as shown by the innuendo contained in the last sentence of paragraph 12, is that he was called a "torturer of animals." The publications do not so charge the plaintiff. The most that can be said is that vivisection is charged to be torture to the animals, from this it may be inferred that those who perform the vivisection are torturers. However, nowhere do the publications state that plaintiff himself performed vivisections. The words complained of were not written of the plaintiff.

Plaintiff bases his entire complaint upon the theory that the publication is so obviously harmful to plaintiff's reputation that no explanation of meaning or allegation of actual injury is necessary. His principal argument is that since the words relate to plaintiff's profession they are libelous *per se* and no damages need be alleged. This is not the law in Illinois.

■ In Walker v. Tribune Co., C.C.N.D. Ill., 29 F. 827, plaintiff contended he was damaged in his reputation as a lawyer by an article in the defendant's newspaper which criticized his writings. In sustaining a demurrer because of failure to allege sufficient facts showing special damages to plaintiff, the Court said, 29 F. at page 829: "* * * I think the law is well settled that, when the alleged libelous words are not in themselves actionable, the plaintiff must not only charge the defamatory meaning by an appropriate innuendo, but he must also aver and prove special damage, and a failure to do so may be taken advantage of by general demurrer."

■ The question whether the words complained of are libelous *per se* is for the court to determine. Kulesza v. Chicago Daily News, Inc., 311 Ill.App. 117–125, 35 N.E.2d 517.

■ The innuendo is irrelevant to the issue of whether the words are actionable *per se*, since words not actionable *per se* cannot be made so by innuendo. Kimball v. Ryan, 1936, 283 Ill.App. 456–466.

■ To determine whether or not the published article is libelous *per se*, we must view it stripped of all innuendo, colloquium or extrinsic or explanatory circumstances; if the words are *unambiguous and incapable of an innocent meaning* they may be declared libelous as a matter of law. Dowie v. Priddle, 216 Ill. 553–558, 75 N.E. 243; Life Printing & ·Publishing Co. v. Field, 324 Ill.App. 254, 58 N.E.2d 307.

■■ The words must be taken in the sense which readers of common and reasonable understanding would ascribe to them, that is, in their ordinary and common acceptation. The meaning of the words alleged to be libelous cannot, by innuendo, be extended beyond a reasonable construction. Life Printing and Publishing Co. v. Field, 324 Ill.App. 254-262, 58 N.E.2d 307. Innuendos are not available to impute libel to an article which in itself is otherwise innocent of any libelous meaning. Words alleged to be libelous will receive an innocent construction if they are reasonably susceptible of it.

■ Viewed in the light of these general principles, the publications cannot be said to constitute libel *per se*.

■■ Words actionable *per quod* are those which require an innuendo to give the words a libelous meaning, and require evidence to show that as a matter of fact some substantial injury has followed from their use. To state a cause of action for words actionable *per quod,* a complaint must contain allegations of fact showing special damages and actual malice. Strauss v. Meyer, 48 Ill. 385, 388.

■ The complaint in the case at bar contains no allegations of fact showing special damages and actual malice and therefore does not state a cause of action for libel *per quod.*

■ The publications in the instant case are fair comment and criticism on a matter of public interest and as such are not actionable. The essential elements of fair comment in order to be deemed not actionable are: (1) that the publication is an opinion; (2) that it relates not to an individual but to his acts; (3) that it is fair, namely that the reader can see the factual basis for the comment and draw his own conclusion; and (4) that the publication relates to a matter of public interest.

■ In Potts v. Dies, 77 U.S.App.D.C. 92, 132 F.2d 734, 735, the Court said: "It is well settled that fair criticism or comment on matters of public interest is not actionable in the absence of 'malice,' *i. e.,* bad faith or a bad motive."

■ Plaintiff contends that the question of fair comment and criticism may not be determined on a motion to dismiss. However, that is not the law of Illinois. In Kulesza v. Chicago Daily News, Inc., 311 Ill.App. 117, 35 N.E.2d 517, and Hahnemannian Life Insurance Co. v. Beebe, 48 Ill. 87, the Illinois courts clearly held that fair comment and criticism on matters of public interest is not actionable, that the question is one of law, and may be determined on a motion to dismiss.

■ Plaintiff, a proponent of vivisection, participated in certain activities to influence public opinion in support of pending legislation which he deemed favorable to his cause. In doing so, he invited criticism and free expression by others of their opinion of his conduct and cause. He should not be heard to complain if the criticism so invited is not gentle.

■ It is a matter of common knowledge that many persons oppose vivisection, and that anti-vivisection organizations are in existence in many of our States. In Pennsylvania Co. for Ins. on Lives and Granting of Annuities v. Helvering, 62 App.D.C. 254, 66 F.2d 284, the Court of Appeals for the District of Columbia reversed an order of the Board of Tax Appeals declining to allow an exemption from estate tax of a bequest to an anti-vivisection society. Cf. In re Kendall's Estate, 133 Misc. 568, 233 N.Y.S. 319.

It is our conclusion that the complaint was properly dismissed for the following

reasons: (1) the words complained of were not written of the plaintiff; (2) the publications are not libelous *per se;* and (3) the publications are fair comment and criticism on a matter of public interest and therefore are not actionable.

The judgment of the District Court is affirmed.